IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RODERICK T. ALLEN,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 14-cv-98-MJR-SCW |
| **AIMEE LANG, C/O EASTON, KIMBERLY BUTLER,** | ) ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This case is before the Court on Plaintiff's Motion for Additional Food Trays – Emergency Relief (Doc. 12) and Motion to Compel Appointment and Attendance of Plaintiff for Evaluation by Medical Doctor – Emergency Relief (Doc. 18). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** both of Plaintiff's motions for emergency relief (Docs. 12 and 18).

## II. Findings of Fact

Plaintiff filed his Amended Complaint on June 2, 2014 alleging that Defendants were deliberately indifferent to his medical needs. Specifically, Plaintiff alleges that he has lost a significant amount of weight, approximately thirty-five (35) pounds since March 2008. Plaintiff indicates that his normal weight is 170 pounds which he weighed in March 2008 (Doc. 13). He claims that as of March 24, 2014 he weighed between 133 and 144 pounds and describes his weight as emaciated to the

point of being skin and bones (*Id.* at p. 2). Plaintiff claims that Defendant Lang was deliberately indifferent in refusing to allow him to see a doctor (*Id.*). Plaintiff also claims that Defendant Easton refused to give him additional trays and extra food and thus has been deliberately indifferent to his medical needs (*Id.*).

In addition to his Complaint, Plaintiff has filed two motions seeking preliminary injunctive relief (Docs. 12 and 18). Plaintiff first filed an emergency motion for additional food trays (Doc. 12). In that motion Plaintiff requested a minimum of three food trays at each of the three meals served at Menard Correctional Center with specifications as to what he believed should be on each food tray (Doc. 12 at p. 1). Plaintiff also requested that he be provided with a snack tray at dinner consisting of two apples, four packages of peanut butter, six packs of crackers, and a packet of powdered milk (*Id.* at p. 2). He also requested two 90-minute outdoor sessions at least seventy-two hours apart for exercise (*Id.*). Plaintiff claimed that he was suffering from advanced malnutrition and needed the additional food trays for adequate nourishment. Plaintiff also indicated that he had lost forty (40) pounds over the course of four years (*Id.* at p. 3).

Plaintiff subsequently filed a motion to be evaluated by a medical doctor (Doc. 18). Plaintiff argued that he needed to be examined by a doctor for his excessive weight loss. Plaintiff indicated that he had received call passes for doctor's appointment but that the passes had been cancelled without explanation (Doc. 18 at p. 2). Plaintiff stated that he believed he was losing weight due to a poisoned tuberculosis test that he received in February 2010 which has caused him to lose excess weight and appear sickly (*Id.*).

Defendant Butler filed a Response in opposition to Plaintiff's request for injunctive relief. Butler pointed out that although Plaintiff indicated he had lost a significant amount of weight as of March 24, 2014, the medical records indicated that he refused to have his vitals taken on that date

and no weight was recorded for Plaintiff on that day (Doc. 40; Doc. 40-1 at ¶ 6). Plaintiff was scheduled for a nurse sick call on July 1, 2014 but the nurse on duty ran out of time to meet with Plaintiff and his appointment was rescheduled. Another appointment set for July 8, 2014 was rescheduled due to time constraints. An appointment on July 10, 2014 had to be rescheduled due to a level one lockdown at the prison. On July 18, 2014 Plaintiff was scheduled to see RN Butler but she believed that Plaintiff had to submit to a tuberculosis test before he could be seen and Plaintiff had refused to take the test. Nursing Supervisor Angela Crain corrected this misconception and Plaintiff was seen and weighed by an RN on August 6, 2014 and weighed 159 pounds. As Butler pointed out that the IDOC website lists Plaintiff at 160 pounds, Plaintiff had suffered no substantial weight loss and thus did not show his need for injunctive relief.

In light of Plaintiff's health concerns raised by his two motions, the undersigned scheduled the matter for a hearing which was held on August 25, 2014.[1] At the hearing, Plaintiff testified that some of his medical records accurately record his weight and some are falsified. He testified that on May 25, 2014 he was evaluated by Misty Thompson, but that the medical record from that date has been falsified because it appears someone later added the phrase "appears clothing too large falling off" to the record. Plaintiff notes that on January 11, 2008 while he was at Stateville, his weigh was listed as 170 pounds. He believes that documentation was accurate. He also finds his weight which was recorded on May 14, 2008 as 170 pounds to be true and accurate. He finds the weight recorded on July 29, 2008 of 172 pounds to be accurate as well as records from August 12, 2009 listed him as 170 pounds.

Plaintiff testified that weights in the 170 range were accurate and is his normal weight.

---

[1] The evidentiary hearing was initially set for August 13, 2014 but as Plaintiff had only recently received some of the exhibits and filings from Defendants, the Court reset the hearing so that Plaintiff could have time to review Defendant's response and file a reply brief if he so chose.

However, he claims that on February 26, 2010 he received a poisoned TB test and that after receiving the test his physical condition began to decline and he began to lose weight. Plaintiff testified that he weighed in the dental office on May 6, 2010 at 150 pounds and that he walked past Dr. Fahim's office and Fahim looked astonished at Plaintiff's appearance. He was weighed next on May 26, 2010 at 152 pounds which he believes is accurate. He also saw correctional officer Liefer and Major Durham on June 30, 2010 and they noted that he did not look too good. A medical record from July 2, 2010 notes him as weighing 160 pounds but he argues that record is false. He testified that he only weighed 150 pounds on the scale but that the nurse told him the scale was off by ten pounds and wrote down 160 pounds. Plaintiff was also weighed on December 17, 2010 at 162 pounds, but Plaintiff maintains that weight is also false.

On March 24, 2014, Plaintiff indicates that he was attacked by his cellmate and as a result was taken to the health care unit. In the unit there was a scale and he stepped on it and weighed 144.44 pounds. He asked the nurse to read the scale and she read it as 144 pounds. The medical records do not note his weight and in fact indicate that he refused to have his vitals taken which Plaintiff acknowledges but indicates that he did step on a scale. He also met with a Dr. J.R. Trost and he asked what his weight was in 2008 and Trost told him 170 pounds. Plaintiff stood on the scale again and it weighed 137 pounds which the correctional officer next to him read out loud as 140 pounds.

Plaintiff acknowledges that his weight was taken as recently as August 6, 2014 and he was documented as weighing 159 pounds. He, however, believes that the weight is false. He testified that when he stepped on the scale it showed 156.2 pounds but that the nurse wrote down 159 pounds.

As to Plaintiff's request regarding extra food trays, Plaintiff indicates that Defendant

Easton refuses to provide him with additional food even though he has asked for additional trays from the inmate workers and they have noted their willingness to provide him with food. He testified that sometimes he has received food with a reduced amount of food on the tray and Easton refused to provide him with a makeup tray. He notes he filed a grievance in March that Easton refused to provide him with additional food when his trays were missing a few items. Plaintiff testified that he wants additional trays beyond the one per meal that he is allotted. He indicates that no doctor has prescribed him additional trays and he acknowledges that in order to obtain extra trays for health purposes he must get approval from the doctor.

   Plaintiff also testified that he has not been seen by a doctor for his health issues and that he has tried to see a doctor since February 2010, after he received what he believed to be a poisoned TV test. He tried to get a referral from Defendant Lang in 2013 to be seen by the doctor but was denied the referral. He received a referral on May 25, 2014 but told Lang that he could not make the appointment and it was rescheduled. Medical records indicate that he then received a call pass but it was cancelled and he does not know why.

   At the hearing, Plaintiff asked the Court to take judicial notice that he was emaciated and skin and bones. He offered to take off the top part of his jumper so that the undersigned could see Plaintiff's condition. While the undersigned indicated that he would not take judicial notice that he was emaciated but would consider his appearance. The undersigned had the video zoomed in on Plaintiff's upper body and Plaintiff removed the top half of his jumper. The undersigned then observed Plaintiff's appearance from the waist up. The undersigned did not find an emaciated or skeletal body. In fact, Plaintiff's body was healthy looking and, although thin, was muscular and appeared fit. He was far from emaciated as his muscles in his stomach and arms were well defined.

### III. Conclusions of Law

**A.**     **Plaintiff's Requests for Witnesses and Ink Pens**

At the hearing, Plaintiff requested to call several witnesses that he had not previously requested. Plaintiff sought to call two doctors he met on March 24, 2014 and July 18, 2014, both who identified themselves to Plaintiff as J.R. Trost. Plaintiff also sought to call the individual who took his weight at his cell on August 6, 2014, an RN Butler who made an entry in his medical records on July 18, 2014, Dr. Fahim who noted his sickly appearance on May 6, 2010, and the warden who could testify as to any paperwork filed by correctional officers Liefer and Durham who noted his sickly appearance on June 30, 2010. The undersigned denied Plaintiff's request as untimely at the hearing. Plaintiff never requested these individuals prior to the hearing and although he documented incidents involving these individuals in his reply brief received by the Court on August 25, 2014, Plaintiff failed to request their appearance in that brief.

Plaintiff objected, arguing that he could not request these individuals prior to the hearing because he did not receive enough ink pens from the law library. He also asked that the Court provide him with additional ink pens for future purposes. However, the undersigned noted that Plaintiff was able to file several motions and a ten page reply brief before the hearing with the ink pens he was provided. Thus, there is no evidence that he lacks sufficient writing instruments to pursue his case. Further, requesting the individuals he wished to call as witnesses would have taken, at most, an extra paragraph in his reply brief or a short separate motion, which he appears to have had enough ink to do in light of his various filings. The Court, thus, finds Plaintiff's explanation as to why he could not request witnesses in a timely manner to be unfounded and **DENIES** his request for witnesses.

Plaintiff also objected to the affidavit of Misty Thompson submitted by Defendants just prior to the hearing and asked that he be allowed to call Thompson as a witness. Plaintiff argued

that he suffered from surprise as he was not aware of the affidavit until the day of the hearing. Thompson's affidavit documented an encounter with Plaintiff on May 25, 2014 in which Plaintiff indicated that he had lost weight and she noted that Plaintiff appeared to have lost weight as his clothes were too large. The Court initially took Plaintiff's objections and request to call Thompson as a witness under advisement. The Court now **DENIES** Plaintiff's request to call Thompson. The Court finds that Plaintiff's testimony regarding his March 25, 2014 visit with Thompson is consistent with the medical records. Plaintiff indicated that he lost weight and showed Thompson his appearance. He noted that he was not weighed that day which the medical records also indicate. Thompson further observed that Plaintiff lost weight and that his clothes appeared too large and that they were falling off. Plaintiff made much of the fact that the record had to have been falsified as he only had a t-shirt and boxers on; thus, Thompson could not have seen the state of his clothes on his body. The Court finds Plaintiff's testimony disingenuous. Plaintiff testified that he had shorts and a shirt on when he saw Thompson, thus she could have accurately documented that his clothes were loose. Further, Thompson's notation that his clothing was too large supports Plaintiff's position that he had lost weight. The Court does not understand why Plaintiff believes that the medical records were falsified as they are consistent with his testimony. However, the Court need not consider Thompson's affidavit in reaching its conclusion on Plaintiff's injunctive request. Thus, the Court will not take Thompson's affidavit into consideration given Plaintiff's request. In light of this decision, the Court finds Plaintiff's request to call Thompson as a witness **MOOT**.

B.  **Preliminary Injunction Motions**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.,* 555

**U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter*, **555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke*, **593 F.2d 772, 774 (7th Cir. 1978)).** *See also*

*W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

Plaintiff requests injunctive relief on two issues. Plaintiff first requests that he be seen by a doctor immediately about his weight loss because he has been denied access to a doctor since 2010 and has lost a substantial amount of weight since receiving a TB test in 2010. He also requests additional food trays because of his decreased weight and claims that Defendant Easton has denied him additional trays.

As to Plaintiff's request to be seen by a doctor, the undersigned finds that Plaintiff has not shown a likelihood of success on the merits. Plaintiff indicates that he has not seen a doctor since 2010 and that he is emaciated and skeletal. Plaintiff's testimony, however, is not credible. The medical records indicate that Plaintiff has seen a doctor on numerous occasions since 2010. In fact, Plaintiff admitted in his testimony that he saw a doctor on March 24, 2014 and that he was weighed at that time. The medical records also indicate that he was scheduled to see a medical doctor on April 25, 2014 for his weight loss but that Plaintiff refused and told the nurse to reschedule the appointment. He was also referred to the medical doctor on May 25, 2014 for his weight loss. The medical records also show that Plaintiff was seen by a doctor on July 2, 2012 and from 2010 to the present he has been seen on numerous occasions by nurses at the correctional facility. There is simply no evidence that he is being denied access to a doctor.

There is no dispute that Plaintiff has lost some weight since 2010. The medical records indicate that Plaintiff weighed 174 pounds as of March 2, 2009 and that his weight has fluctuated over the course of the past five years in the 150's and 160's. Plaintiff, as of August 6, 2014, weighed 159 pounds, although Plaintiff claims that this weight was falsified. The undersigned,

however, finds Plaintiff's claims of falsification ungrounded and not credible. Plaintiff seems to label any part of his medical record which he disagrees with as falsified but there is no evidence to back up Plaintiff's claims that the records are inaccurate. Plaintiff argues that part of Nurse Misty Thompson's entry in the medical records from May 25, 2014 is falsified because he believes her statement that Plaintiff's clothing appeared too large and was falling off was added later. As the undersigned has previously discussed, however, Plaintiff's accusations are unfounded and in fact the medical record supports his own testimony. Plaintiff's accusations are merely more evidence that his testimony is not credible.

Although the record clearly supports Plaintiff's statements that he has lost weight, there is no evidence that he is emaciated or skeletal as Plaintiff claims. In fact, Plaintiff asked the undersigned to observe his condition and removed part of his clothing so that the undersigned could view Plaintiff's upper body. The undersigned did not find an emaciated or skeletal body. In fact, Plaintiff's body was healthy looking and, although thin, was muscular and appeared fit. He was far from emaciated as his muscles in his stomach and arms were well defined. There is simply no evidence that Plaintiff is suffering from the sort of malnutrition or lack of care that Plaintiff claims. It appears that his body is fit and he has seen the doctor in the past. The undersigned sees no need to order Plaintiff to be seen by the doctor when there is evidence that Plaintiff is being seen by nurses on a regular basis and has been seen by the doctor in the past.

As to Plaintiff's request for additional food trays, there is simply no evidence in the record that Plaintiff is entitled to the relief he seeks, given his condition. Plaintiff acknowledged that in order to obtain additional food trays he must have a note from the doctor and that he does not have such a note. Nor is there any evidence in the record that Plaintiff has requested such a note from the healthcare unit. Thus, there is no evidence that Easton is denying Plaintiff additional trays when he is

not medically entitled to additional trays. Plaintiff did testify that on occasions he has been served trays which lack certain items on the tray, but these appear to be isolated events at dinner time and Plaintiff receives a breakfast, lunch, and dinner tray. Nor does this appear to be happening on a consistent basis and as the undersigned noted, there is no evidence that Plaintiff is suffering from malnutrition. It merely appears that Plaintiff wants more food and exercise time, without any evidence of a medical need for such a request. As Plaintiff has not shown any evidence that he is entitled to additional trays or that he is consistently being denied adequate nutrition, the undersigned finds that he is not entitled to the injunctive relief that he seeks. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** both of Plaintiff's requests for injunctive relief.

### IV. Conclusion and Recommendation

It is **RECOMMENDED** that the Court **DENY** both of Plaintiff's requests for preliminary injunction (Docs. 12 and 18) as there is no indication that he is suffering from malnutrition or weight loss. Nor is there any indication that he has been provided with an order from the health care unit allowing him to obtain additional trays of food.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **September 19, 2014**.

  **IT IS SO ORDERED**.
  DATED: September 2, 2014.

              */s/ Stephen C. Williams*
              STEPHEN C. WILLIAMS
              United States Magistrate Judge