IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLNOIS

| | | |
|---|---|---|
| RODERICK T. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-cv-0098-MJR-SCW |
| | ) | |
| AIMEE LANG, | ) | |
| B. EASTON, and | ) | |
| KIMBERLY BUTLER, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

REAGAN, Chief Judge:

### I. <u>Introduction and Procedural Summary</u>

In January 2014, Roderick T. Allen (Plaintiff) filed a civil rights lawsuit in this Court pursuant to 28 U.S.C. 1983 against two defendants (employees or correctional officers at Menard Correctional Center, where Plaintiff was incarcerated). Shortly thereafter, Plaintiff notified the Court of his intention to file an amended complaint. After securing extensions, Plaintiff filed an amended complaint on June 2, 2014 (Doc. 10) naming four Defendants -- Lieutenant Cartwright, Richard Harrington, Aimee Lang, and B. Easton. Plaintiff's complaint voiced concerns about his severe weight loss, his nutrition, and Defendants' inadequate response to his medical condition. More specifically, Plaintiff alleged that he had lost roughly 35 pounds since from March 2008 to March 2014 (down from a "normal weight" of 170 pounds to around 133-144 pounds), that Defendant Lang refused to let Plaintiff see a doctor, that Defendant

Easton refused to provide Plaintiff extra food or food trays, and that Defendants Lang and Easton were part of a conspiracy designed to cause Plaintiff to suffer great bodily harm by starvation.

On threshold review of the amended complaint under 28 U.S.C. 1915A, the undersigned concluded (Doc. 13) that Plaintiff had articulated two claims under the Eighth Amendment to the United States Constitution – Count 1, against Defendant Lang for deliberate indifference to Plaintiff's serious medical need for evaluation and treatment of significant weight loss; and Count 2, against Defendant Easton for deliberate indifference to Plaintiff's need for adequate food to regain his normal weight and avoid further weight loss. The Court dismissed the claims against Defendants Cartwright and Harrington. Because Plaintiff's amended complaint sought injunctive relief, the Court added as a Defendant the current Warden of Menard Correctional Center – Kimberly Butler.

Shortly after filing his amended complaint, Plaintiff filed two motions seeking *preliminary* injunctive relief – Doc. 12, a July 1, 2014 "Motion for Additional Food Trays" (which sought additional food trays per day, with certain specified items on each tray), and Doc. 18, a July 10, 2014 "Motion to Compel" (which sought an immediate examination by a doctor for Plaintiff's excessive weight loss). On July 15, 2014, the Honorable Stephen C. Williams, the United States Magistrate Judge to whom the case is referred for pretrial proceedings, ordered Defendant Butler to respond to Plaintiff's motions by August 5, 2014 and set a hearing on August 13, 2014 (*see* Doc. 23).

Defendant Butler neither responded nor sought an extension of the response

deadline (*see* Doc. 36, p. 2). Judge Williams convened the hearing on August 13, 2014 as scheduled. Defense counsel had finally filed a response on August 12, 2014 - the day before the hearing (*see* Doc. 40). At the August 13th hearing, Plaintiff orally moved to continue the hearing so that he could have an opportunity to reply to Defendants' response. Judge Williams granted that motion, allowed Plaintiff leave to file an over-length reply brief, and re-set the hearing for August 25, 2014. Judge Williams presided over the hearing, received evidence (including testimony by Plaintiff via videoconference from Menard), and took the motions under advisement.

On September 2, 2014, Judge Williams issued a Report and Recommendation ("Report," Doc. 59). The Report recommended that the undersigned District Judge deny both of Plaintiff's requests for preliminary injunctive relief (Docs. 12, 18), "as there is no indication that he is suffering from malnutrition," no evidence that Plaintiff is entitled to additional food trays or is being denied adequate nutrition, and no evidence that he has been given an order from the health care unit allowing him to obtain additional food trays (Doc. 59, p. 11). The Report set a deadline (September 19, 2014) by which the parties could object thereto.

The undersigned District Judge granted Plaintiff three extensions of the objection deadline -- two on Plaintiff's motion and one sua sponte -- ultimately setting a November 7, 2014 objection deadline (*see* Docs. 70, 88, 99). The undersigned Judge directed Defendants to respond to Plaintiff's objections by November 24, 2014 (Doc. 99). The undersigned also granted Plaintiff's motions for a copy of the Local Rules of this District and for a copy of the hearing transcript (*see* Docs. 82, 88).

Plaintiff timely filed his "Objections to Report and Recommendation" (Doc. 104) on November 6, 2014. Although they filed other pleadings after November 6, 2014, Defendants neither filed a response by the November 24, 2014 deadline (as ordered by the undersigned in Doc. 99) nor requested an extension of the deadline. **Defendants' apparent laissez-faire attitude toward court-imposed deadlines herein (e.g., the August 5, 2014 deadline set by Judge Williams at Doc. 23 and the November 24, 2014 deadline set by the undersigned Chief Judge at Doc. 99) is of concern, but it is not the focus of the instant Order.**

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Plaintiff specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court overrules Plaintiff's objections, adopts Judge Williams' Report in its entirety, and denies Plaintiff's requests for preliminary injunctive relief (Docs. 12, 18). Analysis begins with reference to the applicable legal standards.

## II. Analysis

### (A) STANDARD GOVERNING PRELIMINARY INJUNCTIONS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v.*

*Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010),** *citing Winter*, **555 U.S. at 20.** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of a court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. 3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The United States Court of Appeals for the Seventh Circuit has described injunctions like the one sought here, which would require an affirmative act by the

defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id., citing Jordan v. Wolke*, **593 F.2d 772, 774 (7th Cir. 1978).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").** With these legal principles in mind, the Court turns to Plaintiff's objections to Judge Williams' Report.

**(B)     APPLICATION**

Plaintiff's motions for preliminary injunctive relief (Docs. 12, 18) asked the undersigned to (1) order Plaintiff to be seen by a doctor immediately, due to the significant amount of weight he has lost since a tuberculosis test in 2010, and (2) order officials at Menard Correctional Center to give Plaintiff additional food trays. As to the first request, Plaintiff claims that he began rapidly losing weight following a "poisoned" tuberculosis test which he received in February 2010, that he had not seen a doctor since 2010, and that his scheduled call passes for doctor's appointments had been canceled without explanation. As to the second request, Plaintiff maintains that he needs a minimum of three food trays at each of the three meals served at Menard, plus a snack tray with apples, peanut butter, crackers, and powdered milk.[1] He maintains that these additional meal trays are needed to combat his advanced malnutrition.

---

[1] He also requested two 90-minute outdoor exercise sessions.

Abundant evidence regarding Plaintiff's weight on various dates (some of it conflicting) was presented at the hearing before Judge Williams. Plaintiff maintains that his normal weight is in the 170 pound range (a weight recorded in 2008 while he was at Stateville Correctional Center). Plaintiff further suggests that he weighed himself in a dental office in May 2010 at 150 pounds and that later that month he weighed 152 pounds. A medical record from July 2, 2010 says Plaintiff weighed 160 pounds. Plaintiff claims this is a falsified record (or more accurately that the nurse said the scale was off and adjusted by ten pounds, writing down 160 lbs. on the record when the scale showed 150 lbs.) In March 2014, after an attack by a cellmate, Plaintiff was seen at the Menard health care unit. He claims that he stepped on a scale there and weighed himself at 144 pounds. The medical records do not include this information and state, instead, that Plaintiff refused to have his vital signs taken that day.

As Judge Williams correctly concluded, there is no doubt that Plaintiff has lost weight since 2010. It is also clear that Plaintiff was weighed as recently as August 6, 2014, and his weight was recorded as 159 pounds. Plaintiff claims the scale showed 156.2 lbs., and the nurse incorrectly wrote down 159 lbs. But the evidence is undisputed that Plaintiff several years ago weighed 170 pounds and in August 2014 weighed 156 to 159 pounds.

At the August 2014 evidentiary hearing before Judge Williams, Plaintiff asked the Court to take judicial notice that Plaintiff is emaciated and down to "skin and bones." Plaintiff asked to take off his shirt (the top part of his prison jumper) so that Judge Williams could see just how emaciated Plaintiff was. Judge Williams declined to

take judicial notice but agreed to consider Plaintiff's appearance and allowed him to remove his shirt. The video-camera was zoomed in so that Judge Williams could closely observe Plaintiff's physical condition. Having closely observed Plaintiff, Judge Williams did *not* find Plaintiff to be skeletal or emaciated. Judge Williams noted that although Plaintiff was thin, he "was muscular and appeared fit" and "healthy looking," with well-defined muscles in his stomach and arms (Doc. 59, p. 5, p. 10).

Judge Williams further concluded that there simply was no evidence that Plaintiff is suffering from the sort of malnutrition he claims in his motions for preliminary injunction. Judge Williams founds not credible Plaintiff's claims regarding his emaciated condition. Judge Williams also found not credible Plaintiff's claims that he had not been seen by medical staff. The record before the Court established that although multiple appointments were canceled and rescheduled, Plaintiff was been seen by nurses on a regular basis.

Specifically as to his requests to be seen by a doctor for health issues, the record established the following. On May 25, 2014, Plaintiff was referred for a doctor's appointment. Plaintiff was scheduled for a medical appointment (nurse sick call) on July 1 and again on July 8, 2014, but those appointments were canceled due to time constraints. He was rescheduled for the appointment on July 10, 2014, but that appointment was canceled when the institution was put on a level one lockdown. Plaintiff was rescheduled for July 15, 2014 and July 18, 2014, but those appointments were not kept due to a misunderstanding on the part of prison security staff who believed that because Plaintiff had refused TB testing, they were not allowed to remove

him from his cell for routine sick calls (*see* Defendants' Notice of Compliance, Doc. 96, pp. 1-2).

That misunderstanding was clarified and corrected (*id.*, p. 2). Plaintiff was rescheduled to see Dr. Fuentes on October 24, 2014 to address his medical complaints (Doc. 96, p. 2). In the meantime, as mentioned above, Plaintiff was seen by a registered nurse on August 6, 2014 (when his weight was recorded at 159 pounds). And Plaintiff acknowledged during his testimony that he was, in fact, seen by a doctor on March 24, 2014. This undermines Plaintiff's allegation that he has not seen a doctor since 2010.

Judge Williams concluded that there was no cause to order Plaintiff to be seen by a doctor about his weight loss when he "is being seen by nurses on a regular basis and has been seen by a doctor in the past" (Doc. 59, p. 10). Like Judge Williams, the undersigned concludes that Plaintiff's request to be seen by a doctor immediately (one of two motions for preliminary injunction) merits denial, because Plaintiff has not demonstrated irreparable harm or a likelihood of success on the merits of his claim. His testimony regarding his emaciated condition and lack of medical attention are contradicted by the evidence and lacked credibility. His objections to Judge Williams' findings do not warrant rejecting or modifying the Report and its recommended action.

In a 70-page submission – voluminous, detailed, and well-organized (Doc. 104), Plaintiff presents dozens of objections to Judge Williams' factual findings and, separately, legal conclusions. The undersigned carefully reviewed these and finds them unsubstantiated or missing the mark as to the purpose of a Report and Recommendation or the proper function of an objection to a Report and

Recommendation. In many places, Plaintiff insists on correcting the record as to facts not directly relevant to (or dispositive of) whether he is entitled to a preliminary injunction requiring an immediate doctor's appointment or additional food trays and exercise time. He challenges the Report for not including each of these facts or points.

For instance, Plaintiff suggests there is an "Omission of Fact" from the Report – i.e., that Judge Williams should have found that Plaintiff received a poisoned TB skin test in February 2010 which caused his excessive weight loss. The Report did not need to make any such finding. The Report accurately noted that Plaintiff *alleged* that his receipt of a poisoned TB test caused him to lose weight (Report, Doc. 59, p. 2). Judge Williams found it undisputed that Plaintiff had lost weight since 2010. The reason for the weight loss does not directly bear on whether Plaintiff is entitled to the requested preliminary injunctive relief.

Similarly, Plaintiff challenges Judge Williams' omission of certain details of (or "incorrect phrasing" in recounting) Plaintiff's testimony at the August 2014 evidentiary hearing, such as testimony regarding Plaintiff's efforts to see a doctor. Judge Williams acknowledged, and the undersigned finds, that Plaintiff has endeavored to see a doctor, and that several medical appointments were canceled or postponed (e.g., July 2014 appointments for nurse sick call). No one is challenging that fact. However, Plaintiff did see an RN on August 6, 2014. Additionally, an October 23, 2014 "Notice of Compliance" filed by Defendants attested that Plaintiff was scheduled to see a doctor (Dr. Fuentes) on October 24, 2014 "to address his medical complaints" (Doc. 96, p. 2).

In other objections, Plaintiff characterizes Judge Williams' factual findings as "falsifications," and he strenuously takes issue with Judge Williams' credibility findings (adverse to Plaintiff). Having independently reviewed the record, the undersigned finds no basis for these objections and agrees with Judge Williams' summary of the evidence and the ways in which the evidence squarely countered portions of Plaintiff's testimony.

Plaintiff also objects to the Report's "simplification" of Plaintiff's claim against Defendant Easton, arguing that Judge Williams did not understand that Plaintiff is claiming that Defendant Easton is conspiring to cause Plaintiff to suffer great bodily harm or death by starvation (Doc. 104, pp. 7-8). The undersigned concludes that the Report (which was focused on the two motions for preliminary injunction and not intended to be an exhaustive summary of each allegations of Plaintiff's amended complaint or each contention in this lawsuit) contains an accurate and adequate overview of Plaintiff's claims, and the undersigned is well familiar with those claims from having drafted the threshold review Order herein. The Report is not flawed for failure to restate all of Plaintiff's claims and contentions; the Report correctly addressed the two motions for preliminary injunctive relief and the claims and evidence pertinent thereto.

Next, Plaintiff insists that he has met the requirement for issuance of a preliminary injunction, based on his testimony – which he claims was ignored or glossed over by Judge Williams -- "that Defendant Easton was constantly serving Plaintiff food trays with more than half the food missing" (Doc. 104, p. 8). Judge

Williams did not ignore Plaintiff's testimony or overlook this aspect of Plaintiff's argument for injunctive relief. Judge Williams noted (Doc. 59, pp. 4-5): "As to Plaintiff's request regarding extra food trays, Plaintiff indicates that Defendant Easton refuses to provide him with additional food…. He testified that sometimes he has received [trays] with a reduced amount of food on the tray and Easton refused to provide him with a makeup tray…. Plaintiff testified that he wants additional trays beyond the one per meal that he is allowed." Additionally, the Report stated (Doc. 59, p. 11) that Plaintiff had testified that:

> on occasions he has been served trays which lack certain items on the tray, but these appear to be isolated events [only] at dinner, and Plaintiff receives a breakfast, lunch, and dinner tray. Nor does this appear to be happening on a consistent basis and …, there is no evidence that Plaintiff is suffering from malnutrition. It merely appears that Plaintiff wants more food and exercise time, without any evidence of a medical need for such a request.

Judge Williams heard and understood Plaintiff's testimony, but he found that Plaintiff had not demonstrated the prerequisites for preliminary injunctive relief on the issue of additional food trays. The undersigned agrees that as to the request for additional food trays, the evidence did not support the conclusion that Plaintiff was entitled to the relief he sought. The evidence did not show Plaintiff to be malnourished (so as to be in need of the additional meals) or to have taken the proper steps to secured extra meals. Plaintiff himself acknowledged that to obtain extra food trays he needs a note from a medical professional, and not only does he have no such note, there is no evidence he ever requested such a note from the healthcare unit. The record before the

Court does not indicate that Plaintiff is medically entitled to supplemental food trays or that Defendant Easton is denying Plaintiff food to which he is entitled.

Plaintiff also objects (Doc. 104, pp. 21-23) to Judge Williams' refusal to allow Plaintiff to be given additional ink pens and to call certain witnesses Plaintiff contended would testify as to Plaintiff's "sickly appearance" or loose-fitting clothes.  As to the ink pens, Plaintiff asked the Court to supply Plaintiff additional ink pens, but Judge Williams reasoned that Plaintiff was able (with the ink pens he already had) to file multiple motions plus a ten-page reply brief prior to the evidentiary hearing, so there "was no evidence that he lacks sufficient writing instruments to pursue his case" (Doc. 59, p. 6).  As to the witnesses, Judge Williams found the motion moot as to one witness and denied the request as untimely as to the other witnesses, finding no justification for Plaintiff's failure to request the witnesses earlier (*id.*).  The undersigned, having freshly considered both requests, finds that the request for additional ink pens and the request to call additional witnesses were properly denied.

Having conducted de novo review of the portions of the Report to which Plaintiff specifically objected, the Court reaches the same ultimate conclusion Judge Williams did.  As to Plaintiff's request to be immediately seen by a doctor and his request for additional food trays/meals, the record before the Court shows neither that Plaintiff "will experience irreparable harm without a preliminary injunction" nor that his claim against Defendants "has a reasonable likelihood of success," so he has not met "the requirements for preliminary injunctive relief."   ***Wheeler v. Talbot,* 770 F.3d 550,**

**552-53 (7th Cir. 2014),** *citing Munaf v. Geren,* **553 U.S. 674, 690 (2008), and** *Stuller, Inc. v. Steak N Shake Enterprises,* **695 F.3d 676, 678 (7th Cir. 2012).**

Finally, subsequent to Judge Williams' issuance of the Report, Plaintiff filed a "Motion for Photographic Documentation of Plaintiff's Physical Condition" (Doc. 103), in which he asks the Court to order the making of a video and photographic record of his physical condition "unobstructed, from the waist up," and provide the photographs and recording to Plaintiff. Plaintiff suggests this record of his condition would be useful for comparison purposes at a future date.

At the evidentiary hearing on Plaintiff's motions for preliminary injunction, Judge Williams allowed Plaintiff to remove his clothing from the waist up, and Judge Williams observed Plaintiff's condition and made findings regarding that condition in his Report. The record on this issue is clear. The undersigned District Judge needs no further evidence as to the motions currently before him. Plaintiff has shown no basis to make an additional record on this point, and the Court **DENIES** this motion (Doc. 103).

### III.  Conclusion

For all these reasons, the Court **ADOPTS** Judge Williams' Report (Doc. 59), **DENIES** Plaintiff's motions for preliminary injunction (Docs. 12, 18), and **DENIES** Plaintiff's motion for photographic documentation (Doc. 103).

IT IS SO ORDERED.

DATED December 9, 2014.

**s/ Michael J. Reagan**
Michael J. Reagan
United States District Judge
